231649 Ronald Neels v. Brent Fluke May it please the Court, Counsel. My name is Matt Templar, and I am an Assistant Attorney General from Pierce, South Dakota, and I represent Warden Brent Fluke. This case boils down to answering whether there is a reasonable probability that the results of Neels' trial would have been different had his attorneys raised a single objection during the prosecutor's opening statement. Given the overwhelming evidence against Neels, including his confession to much of the abuse he inflicted on T.N., the answer to that question must be no. The District Court recognized that the evidence against Neels was overwhelming, yet still determined that he could prove prejudice under strict. That directly contradicts this Court's precedent in Reed v. Norris and Christiansen v. Ault, where this Court said when the evidence is overwhelming, it is impossible to prove prejudice. This was not a close case. We had detailed testimony from T.N. about the 14 years of abuse that she suffered at the hands of Neels. That testimony was corroborated in its innocuous details by her mother, M.N., and then also there was details corroborated through the investigation itself by detectives who found deleted text messages on T.N.'s cell phone because she said she read them and then deleted them so that her mother wouldn't find them. Those text messages had explicit conversations between her and Neels about their sexual and inappropriate relationship. On top of that, and I think what is ultimately the downfall of Mr. Neels' case, was his confession to Detective Walsh, where he gave detailed answers after initially denying any wrongdoing. And I think that's where he slipped up, is he tried to minimize his conduct by acknowledging the inappropriate relationship, but then saying T.N. was older when it happened. The age of consent in South Dakota is 16, so Neels tried to paint it as everything happened when T.N. was at least 16, which would have eliminated about half the charges he faced. But where he slipped up is when Detective Walsh asked him, well, when do you think T.N. said the first thing happened? And he said it probably was when she was 10. That exactly tracks T.N.'s disclosure where she said the sexual abuse started when she was 9 after Neels' first back surgery and the first sexual penetration took place when she was 10. Now, in addition to this overwhelming evidence, I think where the district court's analysis goes sideways in finding that Neels has shown prejudice under Strickland, is when it comes to the jury instruction that the trial judge gave about arguments and statements of counsel are not evidence to be considered when determining guilt. The district judge found that that instruction, which was given both before opening statements and before closing argument, had no curative effect. That directly contradicts Strickland, which says we must presume that juries follow the law, and when deciding prejudice, we can't look at the possibility of arbitrariness, whimsy, caprice, or nullification. Although that standard instruction is given in virtually every case, isn't it? It's given in virtually every case, that's correct. But that still doesn't negate the curative effect that it would have under a procedural misconduct analysis. But because this is a Strickland analysis, we have to presume that the jury followed that regardless of the district judge relying on Conrad to say it didn't have a curative effect. That strikes me as sort of slicing things a little too thin, which is to say that, you know, the point I'm trying to make is that we'd never have a prosecutorial misconduct case, because by its nature, prosecutorial misconduct usually requires an affirmative act by the prosecutor. I just don't know that you eliminate it. Maybe it is somewhat ameliorative in the sense that it does something, but I don't know that it completely cures it. And I don't think that's an effective assistance of counsel case, because the argument is you should have objected, counsel. And so I actually see less of a reason for applying that in an effective assistance of counsel case than I do in a prosecutorial misconduct case. Well, a couple points on that, Your Honors. I think we have to apply it because of Strickland. But also I think it's important to look at the timing of the statement and the short nature of it, too, is that this came in opening statements. That was the only spot. And this Court did. But it was a statement that was designed to get the jury to focus on how it viewed the evidence from that point forward, so that it wouldn't just be kind of a passing thought. It was, in essence, soliciting the jury to think about the case in a certain way. I understand that, Your Honor. I think the main point, too, is that, one, that it was that single statement. It wasn't carried out through the entire. Counsel, by single statement, you mean almost all the opening statement? Right. When I say single statement, I think of one sentence. And this is, gosh, six or ten paragraphs, something like that. So when I'm saying single statement, Your Honor, I'm meaning just the opening statement itself. All of it. Correct. It's not the situation in Conrad where you have the inappropriate comment was made during opening statement, closing argument, and through the testimony of an FBI agent about the purpose behind the gun control statute. But it was initially attempted in the closing here, too, also, wasn't it? It was. And then Mr. Neils' counsel objected. And that's why we haven't challenged the deficient performance analysis that the district court found underneath that Strickland two-prong test. But, again, it always has to come back to the prejudice because, as the Supreme Court said in Strickland, not every error of counsel will affect the verdict. And here, I think this case is the perfect example of that because this, again, like I said, wasn't a close case. You have the overwhelming evidence, including Neils' own confession to the abuse. If there was a situation where it was a close case where, say, all we had was the testimony of T.N. and Neils adamantly denied everything, then I think it leans more towards that there would be prejudice. But because of the overwhelming evidence, I don't think any other decision can be reached other than a lack of prejudice. And I would turn the court to the Barea case that I cite in the briefs. And while I recognize that is a misconduct case or, excuse me, a prosecutorial misconduct case and not a Strickland case, I think it still helps because when you look at that case, Barea admitted to starting the fight that led to the assault that he was charged with. He admitted to throwing multiple punches and kneeing the victim in the face. And he said he ended the fight by kicking the victim in the face as hard as he could like he was kicking a 45-yard field goal. This Court said there was no prejudice there because the evidence against Barea was strong. If the evidence against Barea is strong and prevents a prejudice determination, then overwhelming evidence against Neils prevents a prejudice determination. But isn't there — don't you have to consider the nature of the prosecutorial misconduct, too? Suppose that counsel had flat-out lied in closing arguments or in opening arguments and said, we have a confession here. We absolutely have a confession here. It turns out there's no confession at all. And the jury convicts. Even if there was overwhelming evidence, I think there would be a pretty good argument that when you hear the word confession, that the jury might have changed its mind. It might have been tipped over to the other side. Now, maybe your argument is that this doesn't rise to the level of lying about a confession. That's fine. But don't you have to consider the nature of the misconduct, too? I think you would have to consider the misconduct. I wouldn't disagree with that, Your Honor. But I think here, because there was that detailed confession admitting to almost all of the abuse, that that takes care of that concern that you have. And I think that also goes back to the Barea point of he admitted to the elements that he was charged under, and there, while he admitted to it, he actually had a defense. At first he claimed self-defense, and then he claimed that the co-defendant was more responsible for the significant injuries that the victim had than he did. But here, the problem I'm having with the nature of the misconduct is sort of the one that the Chief identified, which is this particular golden rule sort of argument says put yourself in the position of the victim, the 10-year-old victim, and imagine you were the one abused. And that's not necessarily — that's not what jurors are supposed to do. And so, you know, the juror, when asked to do that, might say, well, I'm really angry. I want to see this guy, you know, thrown behind bars for the rest of his life or whatever. And I just wonder whether the overwhelming evidence can overcome that. I understand where that would be a problem, Your Honor. And that's, again, why we haven't disputed the impropriety of the statement. But I think because it only came at that one point, and then everything that the prosecutor said in her opening statement tracked what T.N.'s testimony was and what M.N.'s testimony was. And if the Court looks at that chart that I have on, I believe, page 20 and 21 of my initial brief laying out the parts of the statement and then the sites to the record where that came in that one instance. And while, yes, agree with Judge Bitton that it was the entire opening statement, that one instance, in that limited sense of a week-long trial, also negates a prejudice finding. And that's the Donnelly case from the Supreme Court or the Brecht analysis where you had two pages of a 900-page transcript was an inappropriate comment on the defendant's right to remain silent. Here, it's three pages of a 700-page transcript after hearing three days of testimony that backed up what the prosecutor was saying. When you combine all of that, there is no way that Niels can overcome the overwhelming evidence to show a finding of prejudice. If there are no further questions from the Court, I would reserve the remainder of my time for rebuttal. Thank you. Thank you, Mr. Templer. Mr. Ehrenberg. Thank you. May it please the Court, Counsel. The State doesn't want you to think about anything other than Excuse me. Mr. Pratt. Mr. Clark, would you reset the clock, please? It's zero facing me. Sorry. That's all right. I just want to make sure we are all together. All right. Thank you. The State wants to hang its hat on just one issue. That is, did they provide sufficient evidence, just the evidence, about whether or not this particular defendant committed some outrageous I think it's a little stronger than that. I think they're saying more than sufficient, that the evidence is well beyond sufficient. It is overwhelming, which is the language in our cases. And we have numerous cases that have not found prejudice when the evidence in the case was overwhelming. And in this case, the judge, the district court even used that descriptor. Well, clearly, though, the State only wants you to think about ineffective assistance of counsel in the Strickland standard, which has been not thrown out in this case whatsoever. But there's something more important the State doesn't want you to think about. And that's whether or not Mr. Neils received his constitutional right to a fair trial. Now, that's what Judge Schreier, an extremely experienced district court judge, adequately analyzed. Yes, there were certainly mistakes made regarding Mr. Neils' evidence. But what happened in this case is, during the opening statement by the prosecutor, which is not the attorney general's office in this case, the State's attorney's office in Minneapolis County, she got up and within a matter of just a couple lines stated, think of yourself as this young woman who's the victim in this case, and then continued on for maybe five or six minutes. I mean, if you read the entire four transcripts involved in this case, she spent a lot of time introducing how you should put yourself in the shoes of this poor young victim. And then what happens by his attorneys? Nothing. During the opening statement. I'm sorry? During the opening statement, right? The attorneys objects during closing, right? I'm sorry? During the closing argument, the attorney did object, right? That's correct. Correct. And the judge took proper action, correct? Well, I don't think so. During the closing? Just at the closing? I've not heard any argument about the closing. Tell me. I understand. But the judge did not go and tell the prosecutors that during the opening statement, you can't make a statement like that. Jurors, this is what's happened. You can't consider. I understand about the opening. But during the closing, you agree that was done properly by the judge? Well, yes. Thank you. I mean, at that point, yeah, but it's a way too late. Was there just one objection? I've been assuming. Was there just one objection by the defense during the closing argument? Right. I mean, for all intents and purposes, I mean, attorneys make mistakes but there was just one. Yeah, but there was just one. I really am asking, before I confirm, we call them honest questions. I really am asking an honest question here. There was just one objection, right? Right. Thank you. Yep. And you could tell, I think, from your questions to the Deputy State's Attorney or Deputy Attorney General in this case, that nothing happened by the defendant's attorneys. I mean, they virtually, if you read the transcripts, they didn't make an objection until after all the evidence was in. They didn't attempt to interfere with the way the jurors were going to analyze this case. They had been told by the prosecutors, put yourself in this victim's shoes. So, counsel, only in the opening statement, right? Only in the opening statement, but nothing happened during the rest of the trial to stop the jurors from just thinking about that. But what did happen is a lot of what was said, not the put yourself in their shoes, but a lot of what was specifically said was proven at trial, I think. I mean, is that a fair statement? Well, as far as what the prosecutors wanted to prove about the sexual abuse that this young girl had suffered, certainly that's true. Yeah. And so, you know, while I'm concerned about the misconduct itself, on the prejudice point, suppose we just change these facts slightly and we have a video showing your client sexually abusing his daughter, and she's obviously young in the video, and you make the exact same argument here. Wouldn't you say that there's just no way that that's prejudicial to your client because we've got a video showing him abusing his daughter? No, I can't join you in on that. I don't think that that's the appropriate conclusion to draw in this particular case because of the damage that was caused at the beginning of the case, which allowed the jurors to consider all the evidence as if they were in the shoes of a victim during the entire trial, excluding the final statement of the attorney. Counsel, what's your best authority for that type of failing on the part of defense counsel in light of that kind of statement by a prosecutor being effective in overcoming overwhelming evidence? Well, I would refer the Court to the Judge Schreier's written order, which stated that although there was overwhelming evidence about Mr. Neal's acts... Well, that's what we're reviewing, but what I'm asking about is case law from the Supreme Court or prior decision of this Court. Right, and she refers to the United States v. Barrera case and other cases in her order supporting her decision, which stated that not only was there overwhelming evidence of guilt by Mr. Neal's, what was also overwhelming was the amount of the misconduct or the result of the misconduct by the prosecutors because Mr. Neal's attorneys were basically sleeping through the entire trial until the closing statement. You know, you can see hundreds of leading questions going unopposed, and you combine that with the statements of put yourselves in the shoes of this poor woman, poor young lady, the result of the misconduct was also overwhelming in Judge Schreier's eyes. I think what you're arguing for here is structural error, if I'm not incorrect, because you're saying, I think, to the Chief and to me, that no amount of evidence I mean, I came up with the video because that's literally the most overwhelming evidence I could possibly think of. There might be something I'm missing, but you're saying the nature of this error is so harmful, so damaging, that there's no way to apply a prejudice analysis to cure it. Well, yes, I agree. And on page 23 of her order, document 37 by Judge Schreier, she says, the jury in the Neal's case for the entire trial receiving the testimony and exhibits not as impartial jurors, but as victims themselves. Indeed, Strickland recognized that some errors will have had a persuasive effect on the inferences to be drawn from the evidence, and altering the entire evidentiary picture. And that happened in this particular case. I don't think Strickland attempts to state that even if the defense attorneys do not commit ineffective assistance under Strickland, that doesn't mean they shouldn't – that the Court shouldn't equally consider at least the constitutional right to a fair trial. But the problem with the structural error argument is the only case I can think of where the Supreme Court has recognized that ineffective assistance is chronic and C-R-O-N-I-C. And that case involved stop – like, the lawyer stopped acting like a lawyer, like, for the defendant. It was a complete and utter failure to provide representation. And I see a pretty darn big error here. I agree with you. But I don't see anything that suggests that throughout the rest of the trial, the lawyer stopped acting like a lawyer. Well, they – but they essentially did, from Mr. O'Neill's point of view. So, Counsel, you think abandonment happened here, the lawyer abandoned being the defense counsel? Mostly. I can't say complete, total abandonment. Thank you. I don't know where the fair trial starts trumping the ineffective assistance of counsel argument. But I think it happened in this case. The jury was allowed to not consider the prosecutorial's misconduct until the case was essentially over, when they were in just final argument, which is not the law that they can consider. It's just their final arguments. And they were prejudiced the whole time. And I think that it was – that Judge Schreier stated at one point in her document that in reviewing the magistrate judge's decision, the magistrate had stated, boy, this is the case at its very worst when we're talking about putting yourself in the defendant's shoes. It was just a complete abandonment at that point until the very end of the trial. Did the prosecutors get up and try and cross-examine people? Sure, they did. There was a lot of evidence that they simply couldn't get rid of. But the right to a fair trial, I think, because of the way things happened in this case, trumps the ineffective assistance of counsel argument raised by the assistant attorney general in this case. And what case stands for that? I'm sorry? What case stands for that? Well, I think the case of U.S. v. Rodriguez in a circuit case from 2009, it's a golden rule case. And the court reviews evidentiary rulings for abuse of discretion. And then also the United States v. James in a circuit decision from 2009. A reversal for prosecutorial misconduct, a defendant must show the prosecutor's remarks prejudice the defendant's right to a fair trial. Also from U.S. v. Tuilk, another a circuit case from 2008, where they try and look at, you know, the degree of prosecutorial misconduct that happened. I don't think the court should allow ineffective assistance of counsel to be just the sole primary, or I should say just the primary point of looking at whether or not this case should be reversed or not. Counsel, you're well within your rebuttal. You can continue, if you like, or reserve some. I'm just going to say at this point that I think the court should look carefully at Judge Schreier's analysis in her order and affirm that order, because I think she's correct when she states Mr. Niels did not get a fair trial in this case, not just because of his attorneys, but because of everything that Mr. Niels lacked in receiving during almost the entire trial. Was there any, just real quickly, were there any other errors? Because I understand the district court to have not, there were no other errors that were identified as requiring reversals. You mentioned fair trial. It seems to me it goes back to Judge Benton's original question, which it was, it's really the opening statement of what it did to the rest of the trial, right? Yes, because of what it did during the remainder of the trial. Counsel, I inadvertently hurried you. You're not the appellant. You can use all of your time, so you're not. I just think Schreier is absolutely correct when she came to that decision, which was a brave decision. I admit that. But I can't find a particular case that you asked about where the attorneys didn't do anything. I mean, they did try and do some things. I don't want to say they didn't. But you also look at the hundreds, hundreds of questions that the prosecutors asked, terrible leading questions. They didn't do anything. Thank you. Thank you, Mr. Ehrenberg. Mr. Templer, your rebuttal. I just have a few short points I want to make, Your Honors. I think the biggest point is that the lines are getting blurred here between prosecutorial misconduct and Strickland and what is being considered. This is an ineffective assistance case. So the focus must be on what Niels' attorneys failed to do. It's not on what the prosecutor did that led to the situation where Niels' attorneys should have acted. It has to be what did his attorneys do. Because the issue about prosecutorial misconduct was brought up on direct appeal under plain air because Mr. Niels' attorneys didn't object. The South Dakota Supreme Court rejected that under the plain air review while finding that it was an inappropriate opening statement. There was no prejudice. The same with when it went to the state habeas. It was dismissed for a, or excuse me, it was dismissed under res judicata because it was the same analysis under the prosecutorial misconduct plain air review as it would have been under Strickland, and that is the reasonable probability of a different result. So we have the South Dakota Supreme Court, the State Circuit Court on habeas, the South Dakota Supreme Court on habeas, and Magistrate Judge Duffy all agreeing that Niels cannot show prejudice because of the overwhelming evidence. Isn't the burden of proof different? And I don't know, I don't know state law on this, at least from your state, but isn't the state law different in terms of the burden on proving prejudice? In plain air review, I think the burden falls upon the defendant. Does it fall upon the defendant in effective assistance claims as well? Yes, Your Honor, under both. So South Dakota has adopted Strickland across the board, and South Dakota's plain air review is the same that the U.S. Supreme Court has set out in that there's, you have the four factors, and you know, an air that is plain that affects a substantial right and then affects the public reputation for the air and how that has on the courts. But I think, importantly, when you look at this, in talking about the golden rule part of it, this Court can go back to Barea. There, the prosecutor said, imagine Barea coming at them when he was talking to the jurors, yet there was still no prejudice there because of the strong evidence against Barea. As I said before, we have the overwhelming evidence against Niels. So even though there was that inappropriate statement at the beginning, the trial is chock full of overwhelming evidence against Niels, chiefly his own confession to that. And I would also point the Court to the Fields v. Woodford case from the Ninth Circuit that I mentioned in my brief. There, the prosecutor during closing argument said, quote, think of yourself as Rosemary Janet Cobb, and then he went on to describe everything that happened to her. Yet the Court said that was not — while it was a golden rule violation, there was no due process violation, and Fields still had his fair trial because the prosecutor's statements were supported by the evidence, the trial judge had instructed the jurors that the arguments and statements of counsel were not evidence, and that had he delivered the exact same closing argument in putting it in the third person, it would not have mattered because that would have been an appropriate closing argument. The same here. If you replace every time the prosecutor said you with T.N.'s name or she or her, it's an appropriate opening statement, and there would be nothing for Niels' attorneys to object to. That's why there's not a reasonable probability the results of trial would have been different had the attorneys objected to opening. Thank you. Thank you, Mr. Chempler. Thank you to both counsel. We appreciate the arguments you've provided to the Court in supplementation to the briefing. We'll take the matter under advisement.